IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| **EVERETT WHITLEY,** | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-12-3428 |
| **PRINCE GEORGE'S COUNTY, MD,** *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This Memorandum and Order addresses the Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment, ECF No. 6, that Defendants Prince George's County, Maryland ("the County"), Detective Thomas Harley, and Detective Maurice Talley filed, and Plaintiff Everett Whitley's Opposition thereto, ECF No. 10. Defendants have not filed a reply, and the time for doing so has passed. *See* Loc. R. 105.2.a. I find that a hearing is unnecessary in this case. *See* Loc. R. 105.6. For the reasons stated below, Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

An individual named Eric Jamal Harper was shot on October 24, 2009 at the entrance to an apartment building located at 6802 Atwood Street, District Heights, Maryland, by someone other than Plaintiff.[1] Compl. ¶¶ 8 & 11, ECF No. 1; Aff. & Application Accompanying Search

---

[1] In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-

& Seizure Warrant ¶ 4, ECF No. 6-1. Mr. Harper stated that a "black male wearing green shirt dark pants with dreaded hair" shot him. Aff. & Application ¶ 4. When Prince George's County Police Detective Harley interviewed one eyewitness, she described the shooter, whom she said she saw from an upstairs window in the apartment building, as a "black male wearing green shirt dark pants with dreads," and she identified Plaintiff in a photo array as the shooter. *Id.* When another officer interviewed the same witness, she said that she "was in [her] apartment and heard two shots when she looked out of the window and saw two males running across Atwood Street towards District Heights Parkway, one suspect had on a green shirt and blue jeans . . . ." Incident Report 2, ECF No. 10-2. She said that "she saw the flash of the gun but could not provide any other details." *Id.* Another eyewitness said that "she saw a[n] older style gold van fleeing the area in a high rate of speed." *Id.*

Defendant Detective Harley swore out an affidavit and applied for a search and seizure warrant for 6802 Atwood Street, Apartment 2, stating that the eyewitness who identified Plaintiff informed the police that Plaintiff and the other suspect lived in Apartment 2. Aff. & Application ¶ 4. Defendant Detective Harley stated that he believed that the handgun used in the incident, as well as its ammunition, were in Apartment 2, and sought to seize those items as evidence. *Id.* ¶ 5. The state judge found that probable cause existed to search Apartment 2 and issued the search and seizure warrant ("Warrant"). Search & Seizure Warrant 1. According to Plaintiff, "the eyewitness statement and photographic identification relied upon by the Defendant Detectives was improper and incorrect." Compl. ¶ 12. Plaintiff claims that the Defendant Detectives "obtained a warrant, under false pretenses, for the arrest of Mr. Whitley." *Id.* ¶ 13.

---

moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).

On November 23, 2009, Defendants executed the Warrant and "physically attacked" and arrested Plaintiff, who was present at Apartment 2 at the time of the search. *Id.* ¶ 14; Defs.' Mot. 2. At the time of Plaintiff's arrest, Defendants seized documents and 0.2 grams of marijuana, but no weapons or ammunition. Search & Seizure Warrant Return, ECF No. 6-1. Plaintiff was charged with violations of Maryland law in conjunction with Mr. Harper's shooting. Compl. ¶¶ 14–15 & 19. Plaintiff spent more than forty days incarcerated before he was released and "all criminal charges were terminated in favor of Mr. Whitley." Compl. ¶¶ 17–18.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, if the Court considers matters outside the pleadings, as the Court does here,[2] the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013). Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, No. 12-1722, --- F.3d ---, 2013 WL 1866940, at *3 (4th Cir. May 6, 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts

---

[2] Plaintiff argues that the Court should not construe Defendants' motion as a motion for summary judgment because discovery has not commenced, and the Court only should deny Plaintiff the opportunity for discovery "if the submissions to the Court showed that additional discovery would be immaterial." Pl.'s Opp'n 7. It is true that "[s]ummary judgment should not be granted 'where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'"*Linnemann v. City of Aberdeen*, No. MJG-12-2021, 2013 WL 3233526, at *2 (D. Md. June 25, 2013) (quoting *Anderson*, 477 U.S. at 250 n.5). Further, "[i]n such a case, the court may deny summary judgment under Rule 56(d) *if the nonmovant shows through affidavits* that it could not properly oppose a motion for summary judgment without a chance to conduct discovery." *Id.* (emphasis added). Here, additional discovery would not affect this Court's ruling on summary judgment, as shown below. Moreover, Plaintiff has not filed a Rule 56(d) motion or an "affidavit or declaration [that shows] that, for specified reasons, [he] cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d).

from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

### III. DISCUSSION

#### A. Compliance with the Local Government Tort Claims Act

Defendants contend that the Court should dismiss all of the state law claims against all of the Defendants in Counts VI – XIX, XXII, XXIII, and XXV because Plaintiff failed to comply with the notice and pleading requirements of the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts & Jud. Proc. §§ 5-301 – 5-304. Defs.' Mot. 9–10. Plaintiff counters that the Court should entertain all of the state law claims because Plaintiff substantially complied with the LGTCA's notice requirements and, in any event, Defendants were not prejudiced by Plaintiff's failure to comply with the statute, and Plaintiff has shown good cause for his failure to give notice. Pl.'s Opp'n 17–18.

Under the LGTCA, "a local governmental entity is liable, up to $200,000 per person, $500,000 for all claims, for its own tortious conduct. It also is liable for tort judgments for compensatory damages rendered against its employees, if the judgment arises from tortious conduct committed within the scope of the employment." *DiPino v. Davis*, 729 A.2d 354, 370–71 (Md. 1999). The LGTCA applies to state constitutional torts, as well as common law torts. *Martino v. Bell*, 40 F. Supp. 2d 719, 723 (D. Md. 1999). However, to sue a local government or its employees for unliquidated damages, a plaintiff must provide written notice of the claim within 180 days after the injury giving rise to the suit. Md. Code Ann., Cts. & Jud. Proc. § 5-304(b) (West 2009). Further, the notice must "state the time, place, and cause of the injury," *id*.

5

§ 5-304(b)(2), and it must be provided to the county solicitor or county attorney, *id.* § 5-304(c)(3)(iii). Plaintiff concedes that he did not give actual notice. Pl.'s Opp'n 17.

Failure to give actual notice is not fatal to a claim if a plaintiff substantially complies with the notice requirements, *Huggins v. Prince George's Cnty.*, Md., 683 F.3d 525, 538 (4th Cir. 2012), as Plaintiff insists that he did here, Pl.'s Opp'n 17. Although a substitute for full compliance, substantial compliance is a narrow exception to the LGTCA notice requirement:

> The touchstone of substantial compliance is whether the alleged notice was sufficient to fulfill the purpose of the requirement. The purpose of the notice requirement is to apprise local governments of possible liability at a time when they can conduct their own investigation into the relevant facts, while evidence and the recollection of witnesses are still fresh. Thus, substantial compliance will occur when the local government receives actual notice such that it is given the opportunity to properly investigate the potential tort claim.

*Huggins*, 683 F.3d at 538 (quoting *Hansen v. City of Laurel*, 996 A.2d 882, 891 (Md. Ct. Spec. App. 2010) (alteration, citation, and internal quotation marks omitted)). Notably, "substantial compliance has no application to an outright failure to comply." *Moore v. Norouzi*, 807 A.2d 632, 643 (Md. 2002) (citing *Blundon v. Taylor*, 770 A.2d 658, 670 (2001)). Therefore, "[t]here must be some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Id.* Also, in addition to showing "substantial compliance as to the content of the notice within the 180-day period," a plaintiff must show substantial compliance "as to the statutory recipient." *Huggins*, 683 F.3d at 538.

Plaintiff argues that "Defendants have responded to, and vigorously defended this case" and "the County conducted its own investigation into Mr. Whitley within 180 days of the injury." Pl.'s Opp'n 18–19. But Plaintiff does not demonstrate that he actually did anything at all in an attempt to provide the notice to prompt the County to do so. *See Moore*, 807 A.2d at 643. Nor does he demonstrate that notice of his claims was provided. *See id.* Thus, he

6

necessarily has failed to show that the county solicitor or county attorney, as the recipient designated in the LGTCA, received notice. *See Huggins*, 683 F.3d at 538. Thus, Plaintiff has not shown that he substantially complied with the LGTCA's notice requirement. *See id.*; *Moore*, 807 A.2d at 643.

Nonetheless, "unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." Cts. & Jud. Proc. § 5-304(d). Defendants have not shown that Plaintiff's failure to provide notice caused any prejudice to their defense. Also, Plaintiff incorporates into his Opposition a motion for the Court to hear his lawsuit, despite his failure to give notice. *See* Pl.'s Opp'n 19. Thus, the issue is whether Plaintiff has shown good cause for failing to give notice. "Good cause exists when a claimant prosecutes a claim 'with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.'" *Wilbon v. Hunsicker*, 913 A.2d 678, 693 (Md. Ct. Spec. App. 2006) (quoting *Heron v. Stradler*, 761 A.2d 56, 63 (Md. 2000) (citation and quotation marks omitted)). In determining whether good cause exists, the court considers whether there was "'excusable neglect or mistake . . . , [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, . . .' or [4] misleading representations made by representative of the local government." *Id.* (quoting *White v. Prince George's Cnty.*, 877 A.2d 1129, 1142 (Md. Ct. Spec. App. 2005). Plaintiff contends that he did not provide notice because he was "afraid of retaliation" and "Defendants Harley and Talley placed Mr. Whitley in fear for his life." Pl.'s Opp'n 17. He explains that "he was afraid that when Defendants learned that he had filed suit against them, they might be prompted to retaliate against him for doing so." *Id.* at 17–18.

I do not find that Plaintiff has demonstrated good cause for failing to give notice. He certainly has not shown that he mistakenly failed to give notice, was seriously injured or residing outside of Maryland, or was unable to retain counsel, or that the local government misled him. *Wilbon*, 913 A.2d at 693. Rather, Plaintiff states that he intentionally withheld notice because of his concern that the Defendant Detectives would retaliate upon learning of the lawsuit. Pl.'s Opp'n 17–18. Yet, Plaintiff's argument is disingenuous because the risk of retaliation was not eliminated, or even diminished, by actually filing the lawsuit without providing notice. The end result is the same: Defendants are aware of the lawsuit. Moreover, Plaintiff argues that Defendants were not prejudiced by the lack of notice because they knew about the events underlying the lawsuit. Pl.'s Opp'n 18–19. If that is the case, then notification would not have created any greater risk for Plaintiff's safety. Because Plaintiff did not comply with the notice provision of Cts. & Jud. Proc. 5-304(d) and has not shown good cause for failing to give notice, Plaintiff's state tort claims, i.e., Counts VI – XIX, XXII, XXIII, and XXV, are DISMISSED.[3] *See* Cts. & Jud. Proc. § 5-304(b), (d).

---

[3] Plaintiff argues that "Defendants acted jointly with malice aforethought and gross negligence . . . , thus precluding immunity under the Local Government Tort Claims Act." Pl.'s Opp'n 10. However, the LGTCA does not provide immunity. Rather, it provides a mechanism for bringing suit against the local government and its employees and, when the trier of fact does not find that the employee acted with malice, the LGTCA shifts the burden of paying damages to the government. *See* Cts. & Jud. Proc. § 5-302(a) ("Each local government shall provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government."); *id.* § 5-302(b)(2)(i) ("An employee shall be fully liable for all damages awarded in an action in which it is found that the employee acted with actual malice.").

## B. Probable Cause

Defendants argue that the Court should dismiss all of Plaintiff's claims because they all "rest upon th[e] allegation that his arrest was unlawful," and "[t]he undisputed facts in Defendants[,] affidavits . . . demonstrate that the defendant detectives had probable cause to arrest Plaintiff and charge him with the crimes alleged," such that the arrest was not unlawful. Defs.' Mot. 6. Plaintiff counters that "Defendants cannot claim probable cause as a matter of law" because "it is a question for the jury." Pl.'s Opp'n 8.

Of the remaining counts (I – V, XX, XXI, and XXIV), probable cause is integral to the three counts involving false arrest, as a false arrest is one made "without legal justification," and probable cause is a defense to a claim of false arrest brought against a police officer. *See* MPJI-Cv 15:6 & 15:9. Those counts are Counts I (§ 1983 – false arrest), XX (declaratory relief), and XXI (injunctive relief). *See* Compl. ¶¶ 41 (alleging violation of § 1983 based on Defendants' failure to "perform a diligent investigation before falsely arresting innocent citizens"), ¶¶ 280–282 (alleging that Plaintiff's arrest was part of Defendants' "ongoing pattern and practices . . . of routinely arresting African-American males without legal justification, cause, or provocation" & 286 (requesting that Defendants "be enjoined to discontinue their practice of randomly arresting African-American males without legal justification, cause, or provocation"). Although Plaintiff alleges false arrest as a component of three other surviving claims (Count II (§ 1983 – false arrest, excessive force, or malicious prosecution), Count III (§ 1985 – civil conspiracy), and Count IV (§ 1986 – neglect to prevent conspiracy)), those claims also involve allegations of excessive force, *see* Compl. ¶¶ 63, 84 & 96, such that Plaintiff can state a claim for relief even if probable cause existed. The other remaining counts (Count V (§ 1983 – *Monell*) and Count

XXIV (§ 1983 – Fifth Amendment rights regarding interrogation)) do not involve probable cause.

Whether Plaintiff can prove that his arrest was effected without probable cause, such that it was unlawful, depends, in part, on whether it was pursuant to a facially-valid warrant. *See Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998). "[A] public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." *Id*. (noting that a plaintiff can make a claim for false arrest by "'alleg[ing] that a warrantless arrest or imprisonment was not supported by probable cause'") (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996)). In discussing his arrest, Plaintiff appears to conflate the search and seizure warrant issued for the search of Apartment 2 with an arrest warrant. *See* Compl. ¶ 13 ("obtained a warrant . . . for the arrest of Mr. Whitley"); *id.* ¶ 96 ("[the] officers requested a warrant under false pretenses"); *id.* ¶ 82 (same). Yet, Defendants make clear that they did not obtain a warrant for Plaintiff's arrest, as they attach and refer to only the search and seizure warrant and the requirements for a "warrantless arrest." Defs.' Mot. 2 & 4 & Ex. A. Viewing the facts in the light most favorable to Plaintiff as the non-moving party, *Ricci*, 557 U.S. at 586, I find that Defendants had a search and seizure warrant but no arrest warrant.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The existence of probable cause to support a warrantless arrest depends on the totality of the circumstances. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "If the facts are undisputed and only one inference can be drawn from them the question of existence of probable cause is for the court to determine, but when the facts

relied on to show probable cause are in dispute, their existence is a question of fact for the determination of the jury." *Alexander v. Alexander*, 229 F.2d 111, 116–17 (4th Cir. 1956).

Plaintiff insists that the facts establishing probable cause are disputed because "video evidence precludes Mr. Whitley as the shooter" and "[a]ll criminal charges terminated in Mr. Whitley's favor." Pl.'s Opp'n 8. Yet, whether Plaintiff actually committed the crime is not material to whether there was probable cause to arrest him. *See United States v. Williams*, 10 F.3d 1070, 1073–74 (4th Cir. 1993) ("Probable cause 'to justify [a warrantless] arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' *The evidence needed to establish probable cause is* more than a mere suspicion, rumor, or strong reason to suspect but *less than evidence sufficient to convict*.") (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)) (emphasis added). Moreover, it is undisputed that the victim said that the shooter was an African-American male in a green shirt and dark pants, with dreadlocks, accompanied by another African-American male. Aff. & Application ¶ 4. It is also undisputed that an eyewitness provided the same description for the shooter and his companion, identified Plaintiff in a photo array as the shooter, and stated that Plaintiff lived in Apartment 2, where Defendants encountered him when they entered pursuant to a facially-valid search and seizure warrant. *Id.* The eyewitness also said that she saw the two suspects run from the scene. Incident Report 2. Based on the undisputed facts provided by an eyewitness and corroborated by the victim, it was reasonable to believe that Plaintiff shot Mr. Harper, such that Defendants had probable cause to arrest Plaintiff. *See Alexander*, 229 F.2d at 117. Summary judgment is appropriate in Defendants' favor on this ground as to Counts I, XX, and XXI. *See* Fed. R. Civ. P. 56(a).

### C. Qualified Immunity

Defendants assert that "[p]olice officers acting with objective reasonableness are entitled to qualified immunity from § 1983 claims." Def.s' Mot. 5. Although Defendants provide a scholarly discussion of qualified immunity in the abstract, *see id.* at 4–6, they do not actually argue that either of the Defendant Detectives is entitled to qualified immunity. *See id.* Thus, they have failed to show how qualified immunity applies in this instance, and their general discussion of the law, divorced from application to the facts of this case, does not give the Court what is necessary to evaluate Defendants' entitlement to qualified immunity. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials" in reviewing a motion for summary judgment); Loc. R. 105.1 ("Any motion . . . shall be . . .accompanied by a memorandum setting forth the reasoning and authorities in support of it."). Defendants' Motion for Summary Judgment is DENIED without prejudice insofar as it relies on this ground. Defendants are not precluded from filing a second motion for summary judgment on this ground, including its application to the facts of this case, at the conclusion of discovery, if the facts support such a motion. *See Jiggets ex rel. S.J. v. Long*, No. 11-1124, 2013 WL 646512, at *8 n.5 (4th Cir. Feb. 22, 2013).

### D. The County's Liability

Defendants insist that the County can be liable only for "'constitutionally offensive acts of city employees [that] are taken in furtherance of some municipal policy or custom,'" and "cannot be held liable for any alleged constitutional violations committed by its employees on the basis of respondeat superior." Defs.' Mot. 7. They argue that the Court should dismiss all of the claims against the County in Counts I – V and XXIV because "Plaintiff's complaint falls woefully short of demonstrating that his alleged injury was caused by a policy or custom of the

County," as he "provides no specific factual allegations that even hint at a casual [*sic*] connection between any municipal policy and the alleged injuries claimed." Defs.' Mot. 8–9. Plaintiff counters that his "Complaint clearly alleges a policy, practice, or custom of Defendant Prince George's County that caused Plaintiff's injuries at the hands of its police officers, Defendants Talley and Harley, acting in their official capacity," in that it "alleges injury resulting from a government policy of inadequate training or supervision that amounts to deliberate indifference to the rights of not only Mr. Whitley, but all residents of Prince George's County."[4] Pl.'s Opp'n 16.

"Units of local government, such as the [County], are . . . 'persons' which may be sued under § 1983 although . . . not on a *respondeat superior* basis." *DiPino v. Davis*, 729 A.2d 354, 368 (Md. 1999); *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978). A local government only may be sued through an official-capacity action, which "is really an action against the governmental entity, of which the official was merely an agent," where the official "'implement[s] governmental law, policy, or custom,' i.e., the deprivation underlying the § 1983 claim is 'caused by a statute, regulation, policy, or custom of the governmental entity' that the official was implementing." *DiPino*, 729 A.2d at 369 (quoting *Ashton v. Brown*, 660 A.2d 447, 468 (Md. 1995). The government's policy or custom must have "played a part in the deprivation" underpinning the plaintiff's claim, *id.*, that is, "action pursuant to official municipal

---

[4] Plaintiff also insists that pages 37–38 of his Complaint "include specific averments with respect to a conscious choice by the County not to put into place a system under which law enforcement officers are properly trained and supervised in order to protect the rights of the citizenry." Pl.'s Opp'n 17. Pages 37–38 contain Count XVIII, the state common law tort claim of negligent training and supervision. On the basis of a failure to plead that a policy caused the alleged injury, Defendant only requests dismissal of Plaintiff's claims of constitutional violations against the County and, in any event, Count XVIII is dismissed for failure to comply with the LGTCA. *See supra*.

13

policy of some nature [must have] caused a constitutional tort," *Monell*, 436 U.S. at 691. The same principles apply to § 1985(3).[5] *See Moye v. City of Raleigh*, 503 F.2d 631, 635 & n.10 (4th Cir. 1974). Also, because 42 U.S.C. § 1986 creates a cause of action for damages against any individual who knew of and could have prevented a § 1985 conspiracy, but neglected to act, *Burnett v. Grattan*, 468 U.S. 42, 44 n.5 (1984), if a "§ 1985 claim is meritless, the § 1986 claim fails as well," *Brissett v. Paul*, 141 F.3d 1157, 1998 WL 195945, at *3 (4th Cir. 1998)

Counts I–IV and XXIV do not reference any policy or custom of the local government. *See* Compl. ¶¶ 31–100 & 318–32. Indeed, in Counts I and II, Plaintiff appears to state causes of action against the County based on *respondeat superior* by alleging that the County "is vicariously liable for the constitutional violations of its police officers." Compl. ¶¶ 49 & 75. Therefore, Plaintiff fails to state a claim against the County in any of these counts.[6] *See Monell*, 436 U.S. at 690–91; *DiPino*, 729 A.2d at 368; Fed. R. Civ. P. 12(b)(6).

Count V, "*Monell* Claim," alleges a policy or practice of the County:

> 104. The Department has instituted and maintained formal and informal customs, policies, and practices that foster, promote and encourage officers to engage in reckless and dangerous conduct while off-duty, including, but not limited to, shooting citizens and other officers. Without any limitation whatsoever, among the facts supporting a pattern and practice of the type of unlawful behavior here are the following statements and examples.
>
> 105. The policies and customs of the Department, as set forth herein, demonstrate a gross disregard for the constitutional rights of the public and Mr. Whitley.

---

[5] Although Plaintiff does not specify the section of § 1985 under which he brings his claim for civil conspiracy, it is 42 U.S.C. § 1985(3), "Depriving persons of rights or privileges," that creates a cause of action against "any one or more of the conspirators" who conspire to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

[6] Moreover, summary judgment in Defendants' favor is appropriate as to Count I because, as a matter of law, probable cause was present. *See supra* page 11.

> . . .
>
> 107. At the time of the injury to Mr. Whitley, the Department was operating under unconstitutional customs, policies, and procedures.
>
> 108. Mr. Whitley sustained severe injuries and damages as a direct and proximate result of Defendants' misconduct as detailed herein, which misconduct was in keeping with the policies, as evidenced by the pattern and practice outlined above, of the Department.

Compl. ¶¶ 104–05 & 107–08. Yet, this threadbare count cannot survive more careful scrutiny. A *Monell* claim is a form of § 1983 action under which a municipality, such as the County, is liable "where a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom." *Smith v. Ray*, 409 Fed. App'x 641, 651 (4th Cir. 2011). Notably, "'there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice,'" because "[a] municipality is not liable for mere 'isolated incidents of unconstitutional conduct by subordinate employees.'" *Id.* (quoting *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003)).

Plaintiff has failed to describe the alleged "formal and informal customs, policies, and practices" beyond the boilerplate, conclusory statement that the County's police department's customs or policies encourage officers to commit reckless acts off-duty like "shooting citizens and other officers." Compl. ¶ 104. In support of this allegation, Plaintiff attaches to his Opposition an article describing another incident in which Defendant Detective Harley shot a robbery suspect after the man fired a shot at him. Pl.'s Opp'n Ex. A, ECF No. 10-1. This is only one instance of shooting a citizen. Moreover, the officer was not off-duty, and there is no evidence that his conduct was unconstitutional. Rather, the police department's public affairs commander interviewed in the article said that "Harley's actions appear to be justified." *Id.*

Further, these facts do not appear in the Complaint. Additionally, this purported practice is irrelevant to Plaintiff's alleged injuries, which occurred during his encounter with on-duty police officers, did not involve shooting, and, in any event, would be only one other instance. Plaintiff has not pleaded an adequate description of the alleged custom or practice, nor established it through sufficient examples. *See See Smith*, 409 Fed. App'x at 651 (affirming summary judgment in favor of city where plaintiff "failed to present any convincing evidence that a policy or custom ha[d] developed regarding the use of excessive force, sexual assaults or any other unconstitutional actions by officers"); *Walker v. Prince George's Cnty.*, 575 F.3d 426, 431 (4th Cir. 2009) (affirming district court conclusion that "appellants 'failed to make any allegations in their complaint in regards to the existence of the County's policy, custom, or practice, therefore failing to plead' a viable *Monell* claim"). Therefore, on the undisputed, material facts, summary judgment in favor of all Defendants[7] is appropriate on Count V. Fed. R. Civ. P. 56(a).

## IV. CONCLUSION

In sum, Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Specifically, Counts I, V–XXIII, and XXV, are DISMISSED as to all Defendants. Counts II–IV and XXIV are DISMISSED as to the County only.

Defendants' Motion for Summary Judgment is DENIED without prejudice insofar as it relies on qualified immunity as a defense for the individual Defendants.

---

[7] Although Defendants only challenge Count V insofar as it applies to the County, Plaintiff cannot state a *Monell* claim against the individual Defendants in their individual capacity. *See DiPino*, 729 A.2d at 369 (noting that a *Monell* claim "is really an action against the governmental entity, of which the official was merely an agent"). Therefore, summary judgment is appropriate as to all Defendants. *See generally Mason v. City of Wellsburg*, 363 Fed. App'x 233, 234 4th Cir. 2010 (affirming district court's *sua sponte* granting of summary judgment).

Counts II–IV and XXIV remain as to the individual Defendants only.

Defendant Detectives Harley and Talley shall file an Answer no later than August 1, 2013, at which time the Court will enter a Scheduling Order and schedule a Fed. R. Civ. P. 16 conference call with the parties to discuss further pretrial proceedings.

A separate order shall issue.


Dated: July 11, 2013                              /S/
                                                                      Paul W. Grimm
                                                                      United States District Judge


lyb