IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|                                          |     |                         |
|------------------------------------------|-----|-------------------------|
| EVERETT WHITLEY                          | *   |                         |
|                                          | *   |                         |
|     Plaintiff,        |     |                         |
| v.                                       | *   | Case No.: GJH-12-03428  |
|                                          |     |                         |
| PRINCE GEORGE'S COUNTY,                  | *   |                         |
| MARYLAND, ET AL.,                        |     |                         |
|                                          | *   |                         |
|     Defendants.       |     |                         |
|                                          | *   |                         |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This is a civil rights action brought by Plaintiff Everett Whitley ("Whitley") against Prince George's County and Detective Thomas Harley ("Detective Harley") and Maurice Talley ("Detective Talley") arising out of the alleged improprieties surrounding Whitley's arrest on November 23, 2009. This Memorandum and accompanying Order address the Motion for Summary Judgment filed by Detective Harley and Detective Talley (collectively, "Defendants"), ECF No. 25, Whitley's Opposition thereto, ECF No. 29, and Defendants' Reply in support of its motion, ECF No. 32.[1] The Court finds that a hearing is unnecessary in this case. *See* Loc. R. 105.6. For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

An individual named Eric Jamal Harper was shot on October 24, 2009 at the entrance to an apartment building located at 6802 Atwood Street, District Heights, Maryland, by someone

---

[1] Prince George's County was dismissed from this action on July 11, 2013. *See* ECF Nos. 11, 12. Detective Harley and Detective Talley are therefore the only remaining defendants.

other than Whitley. *See* ECF No. 1 at ¶¶ 8, 11. That same day, Detective Talley, a member of the Prince George's County Police Department, interviewed an eyewitness who described the shooter as a wearing a "white shirt" and "blue jeans with dreads to his shoulders." ECF No. 25-3 at 10. That witness later identified Whitley as the shooter during a six-picture photo array conducted by Detective Harley, also a member of the Prince George's County Police Department. *See* ECF No. 1 at ¶12. Based on the witness's identification of Whitley as the shooter, Detective Harley, on November 4, 2009, applied for and obtained an arrest warrant for Whitley. *See* ECF No. 25-1 at 3. The only information in the arrest warrant linking Whitley as the shooter was the witness's identification. *See* ECF No. 25-5. Similarly, on November 18, 2009, Detective Harley swore out an affidavit for a search warrant for Whitley's apartment. *See* ECF No. 25-2.  Just like the arrest warrant, the search warrant application relied heavily on the witness's identification of Whitley as the shooter. *See id*. The state judge found that probable cause existed to search Whitley's apartment and issued the search warrant. *See id.* According to Whitley, however, "the eyewitness statement and photographic identification relied upon by the Defendant Detectives was improper and incorrect." ECF No. 1 at ¶ 12.

Nevertheless, on November 23, 2009, Defendants executed the search and arrest warrants, during which Whitley claims he was "physically attacked." *See id.* at ¶ 14. Whitley was ultimately charged with violations of Maryland law in conjunction with the shooting. *See id.* at ¶¶ 14-15 & 19. Whitley spent more than forty days incarcerated before he was released and had all charges terminated in his favor. *See id.* at ¶¶ 17-18. Following Whitley's release, he filed suit against Defendants claiming that his constitutional rights were violated when they "arrest[ed] him without probable cause, search[ed] him without probable cause, and subject[ed] him to excessive and unreasonable force." *Id.* at ¶ 65. Whitley's complaint contained twenty-five

counts, most of which were dismissed by Judge Grimm on July 11, 2013 following Defendants' (including Prince George's County) first motion for summary judgment. *See* ECF Nos. 11 & 12. Four counts, however, remain, including (1) a § 1983 claim for violation of Whitley's Fourth Amendment rights; (2) a § 1983 claim for violation of Whitley's Fifth Amendment (*Miranda*) rights; (3) a §1985 claim for a conspiracy to violate Whitley's constitutional rights; and (4) a §1986 claim for a failure to prevent a conspiracy to violate Whitley's constitutional rights. Defendants have filed their second motion for summary judgment. *See* ECF No. 25. For the reasons discussed more fully below, Defendants' motion is granted, in part, and denied, in part.

## II.     STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). When ruling on a motion for summary judgment, "[t]he evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

### A.      Section 1983 Claim – 4th Amendment (Count II)

Whitley asserts a claim under § 1983 for violation of his Fourth Amendment rights. *See* ECF No. 1 at ¶¶ 52-78. Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. *See* 42 U.S.C. § 1983. Section 1983, however "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). In his complaint, Whitley identifies the Fourth Amendment as the underlying source of his § 1983 claim. Specifically, Whitley claims that his Fourth Amendment rights were violated when Defendants "arrest[ed] him without probable cause, search[ed] him without probable cause, and subject[ed] him to excessive and unreasonable force." ECF No. 1 at ¶ 65. Defendants filed a motion for summary judgment. *See* ECF No. 25. For the reasons discussed below, the Court finds that a genuine issue of material fact exists as to whether or not there was probable cause to issue either the search warrant or the arrest warrant. As such, the Court will deny Defendants' motion for summary judgment as to Count II to the extent that claim relates to Defendants' wrongful arrest and unreasonable search. The Court will, however, grant Defendants' motion for summary judgment as to Count II to the extent that claim relates to Defendants' use of excessive force, as Whitley has failed to demonstrate the existence of disputed material facts regarding Defendants' use of force.

### 1.        False Arrest & Unreasonable Search

Whitley contends that Defendants violated his Fourth Amendment rights by arresting and searching him pursuant to warrants that contained false and/or misleading statements without which the warrants would not have contained probable cause. *See* ECF No. 1 at ¶ 65. To succeed on a claim that a search or "seizure was unreasonable because it followed from a warrant affidavit that was deficient because it was dishonest," a plaintiff must prove that the attesting officer (in this case Detective Harley) "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit, or omitted from that affidavit 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'" *Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 627 (4th Cir. 2007) (citations omitted). "Reckless disregard" can be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id*. Violations of the Fourth Amendment, however, are not limited to misrepresentations or omissions; a *misleading* statement contained in a warrant affidavit can also violate the Fourth Amendment so long as there is "evidence that this statement . . . was sufficiently likely to mislead the issuing magistrate . . . ." *Wilkes v. Young*, 28 F.3d 1362, 1373 (4th Cir. 1994) (recognizing that a statement in a warrant affidavit need not be "literally untruthful" to violate the Fourth Amendment). Additionally, a plaintiff must prove that the false or misleading statement was material to the judicial officer's finding of probable cause. *See Franks v. Delaware,* 438 U.S. 154, 171-72 (1978); *Tincher v. Fink*, No. 03-0030, 2005 WL 1845319, at *6 (S.D. W.Va. Aug. 2, 2005) ("As the Fourth Circuit has noted, a false or misleading statement made while obtaining a warrant

constitutes a Fourth Amendment violation only if the statement is necessary to the finding of

probable cause.").

First, with respect to the arrest warrant, the Application for Statement of Charges,

prepared by Detective Harley on November 5, 2009 states, in full, that:

> On 10-24-09 the victim (Eric Harper) was shot by the defendant
> (Whitley, Everett) in front of the above address. The victim was on
> his wa[y] home when the defendant stood in front of 6802 Atwood
> Street and pointed a handgun at him and shot two rounds striking
> the victim twice in his leg. The Victim was transported to a local
> hospital where he was treated and released. The victim is waiting
> for surgery to have the bullet removed from his right leg. ***The
> witness [Ms. Nedia Boodie] saw the event and later identified
> [Whitley] by photo spread as the shooter***. All of these events took
> place in Prince George['s] [C]ounty Maryland.

*See* ECF No. 25-5 at 2 (emphasis added).

Similarly, the affidavit prepared by Detective Harley on November 18, 2009 in support of

the search warrant states, in relevant part, that:

> The Witness (Nedia Boodie) stated to this Detective that she
> looked out of her upstairs window located at 6802 Atwood Street
> District Heights, Prince Georges [sic] County Maryland. The
> Witness states that when she looked[,] she saw two suspects
> standing in front of the building. These suspects were described as
> [a] black male wearing [a] green shirt[,] dark pants with dreads and
> a male or female wearing [a] white shirt with dark pants with
> twisted hair. The Witness stated that the male wearing the green
> shirt was the individual who shot the victim. The witness also
> stated that both subjects live[d] down stairs in apartment #2. ***The
> [W]itness was shown a 6 person proto array on 11-2-09 at 2245
> at which time the [W]itness positively identified the Defendant
> (Whitley, Everett) as the shooter in this incident.*** In conclusion[,]
> the [W]itness indicated to this Detective that the defendant lives at
> 6802 Atwood Street apt 2 District Heights, Maryland. The Witness
> has lived on the complex for several years.

*See* ECF No. 25-2 a 2 (emphasis added).

Whitley argues that Detective Harley's statements in both warrant applications regarding Ms. Boodie's identification of Whitley as the shooter were misleading, insofar as that identification was procured through an impermissibly suggestive photo array conducted by Detective Harley. As a result, Whitley contends that this inherently unreliable identification cannot form the basis of a probable cause determination. The Fourth Amendment does "not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause." *Miller*, 475 F.3d at 632. Here, the Court finds that discovery has revealed evidence from which a jury could determine that Detective Harley's statements in the warrant applications that Ms. Boodie identified Whitley as the shooter were made with reckless disregard for the truth; that is, at the time Detective Harley made these representations, he had obvious reasons to doubt the accuracy of the information he reported.

For example, Ms. Boodie testified at her deposition that prior to identifying Whitley as the shooter from the photo array, Detective Harley pointed to the picture of Whitley and suggested to her that he was the suspect. *See* ECF No. 29-1 at 42:13-43:9. Only *after* Detective Harley identified Whitley as the shooter did Ms. Boodie select him as the suspect. If accepted by a jury as true, such a tactic would be impermissibly suggestive. The purpose of the photo array was to determine whether Ms. Boodie – the only eyewitness – was able to independently identify the shooter among a random selection of similar-looking individuals. Obviously, by pointing directly to Whitley, Detective Harley would make it more likely that Ms. Boodie would identify Whitley as the shooter thereby making the photo array improper. *See Thomas v. Varner*, 428 F.3d 491, 503 (3d Cir. 2005) (photo array impermissibly suggestive where witness failed to

identify defendant on several occasions before being told by detective to look "real good" at the defendant).

Further exacerbating the allegedly suggestive nature of Detective Harley's photo array was the fact that the picture of Whitley was the only one of the six photographs depicting a man in an orange prison shirt. This tactic could also be viewed as impermissibly suggestive as it would cause Whitley to stand out from the other individuals depicted in the photo array. *See e.g.*, *United States v. Saunders*, 501 F.3d 384, 390 (4th Cir. 2007) (photo array impermissibly suggestive where defendant's "photo stood out sharply from the others in the array" because "[t]he dark background and lack of overhead lighting in [defendant's] photo distinguished it from the remaining five photos, all of which had light backgrounds and overhead lighting"); *United States v. Wiseman*, 172 F.3d 1196, 1209 (10th Cir. 1999) ("[D]ifferences such as background color can make a picture stand out, and can act to repeatedly draw a witness's eye to that picture."); *Gregory-Bey v. Hanks,* 332 F.3d 1036, 1045 (7th Cir. 2003) (a photo that stands out from the others "implicitly suggests to the witness that 'this is the man'"). Indeed, Detective Harley effectively conceded at his deposition that the photo array depicting Whitley in an orange prison shirt was unfairly suggestive. Specifically, Detective Harley testified as follows:

> **[Plaintiff's Counsel]**: Okay. You mentioned similar attributes. Is one of the – what's the purpose of having similar attributes?
>
> **[Detective Harley]**: So that we're not singling out the suspect.
>
> **[Plaintiff's Counsel]**: What do you mean by that? Describe that to me.
>
> **[Detective Harley]**: Well, we don't want him standing alone so it becomes obvious that you're helping the individual identify.
>
> **[Plaintiff's Counsel]**: So anything that causes the suspect to stand out or look different might be suggestive to the witness that that was the person that you wanted them to identify; is that what you're saying?

**[Detective Harley]**: Yes

**[Plaintiff's Counsel]**: And so I take it your training is to do your best to make sure that that person blends in with everybody else; is that right?

**[Detective Harley]**: Yes.

**[Plaintiff's Counsel]**: Okay. And what about, you know – what about clothing? I mean, if one person had on a bright yellow shirt and everybody else had on black, would that cause him to stand out?

**[Detective Harley]**: Possibly. It's difficult to find yellow shirts sometimes.

**[Plaintiff's Counsel]**: Well, you know, I'm just giving you an example.

**[Detective Harley]**: Sure.

**[Plaintiff's Counsel]**: So you make an effort when you look in that database to pick people who also have at least the same shade clothing; is that right?

**[Detective Harley]**: Absolutely.

**[Plaintiff's Counsel]**: Okay. And why is that? Why is that?

**[Detective Harley]**: So that they can blend in, that you're not aiding to help them to make the decision in selecting the suspect.

**[Plaintiff's Counsel]**: So if one person had, you know, some brightly colored clothes and stood out and everybody else was in dark or black, would that be an appropriate photo array.

**[Detective Harley]**: No.

**[Plaintiff's Counsel]**: Why not?

**[Detective Harley]**: It's a little bit aiding. It's singling them out, that yellow shirt.

**[Plaintiff's Counsel]**: And what does that – what's wrong – in other words, I'm just trying to understand the process. What's wrong with that kind of singling out?

**[Detective Harley]**: Rephrase the question. I don't know where you're taking me.

**[Plaintiff's Counsel]**: Sure. Well, I'm just trying to understand why you want to avoid that.

[**Detective Harley**]: So that you can have a fair assessment of how you're showing your photo array.

[**Plaintiff's Counsel**]: All right. And let me pick an extreme example. If everybody was in what looked like civilian clothes and you had one person that was in [Department of Corrections] orange, you know, it looked like they had their prison jumpsuit on, would that be a fair array?

[**Detective Harley**]: No.

*See* ECF No. 29-2 at 63:22-65:19.

It is clear then that evidence exists to raise a material issue of fact as to whether Detective Harley knowingly conducted an impermissibly suggestive photo array and therefore had obvious reasons to doubt the reliability of Ms. Boodie's "identification" of Whitley as the shooter. Accordingly, Detective Harley's statements concerning Ms. Boodie's purported identification of Whitley, though not explicitly false, could be found to be sufficiently misleading and unreliable that a jury could find that they were made with reckless disregard for the truth. The Court must therefore remove these statements from the warrant applications and determine, based on the remaining content, whether there exists a genuine issue of material fact as to whether probable cause existed.[2] *See Franks*, 438 U.S. at 156 (probable cause determination must be made "with the affidavit's false material set to one side," on the basis of its "remaining content"); *Hindman v. City of Paris, Tex.*, 746 F.2d 1063, 1067 (5th Cir. 1984) ("Under *Franks*, . . . statements in an

---

[2] The Court notes that Judge Grimm's July 11, 2013 decision, which was issued prior to any discovery being taken, addressed the existence of probable cause. *See* ECF No. 11 at 9-11. The Court finds good cause to revisit this issue in light of new evidence identified through discovery that relates to the reliability of statements contained in the warrant applications prepared by Detective Harley that ultimately supported the probable cause determination. *See Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001) ("While the [law of the case] doctrine directs a court's discretion rather than limiting its power, in practice the doctrine is followed unless there has been an intervening change of controlling law, *new evidence has become available*, or the prior ruling is clearly erroneous and would work a substantial injustice.") (emphasis added).

affidavit based on intentional or reckless misrepresentations must be struck, and the warrant's validity then judged on its remaining contents").

Probable cause requires enough evidence "to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949); *see also United States v. Johnson*, 599 F.3d 339, 346 (4th Cir. 2010) ("the standard for whether probable cause exists is an objective one; it exists when, at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense") (internal quotations omitted). "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Without the statements identifying Whitley as the shooter, there is a genuine issue of material fact as to whether the warrant applications contained probable cause. Specifically, as it relates to the arrest warrant, the only remaining statements in the statement of charges related to the status of the victim and had nothing to do with Whitley. *See* ECF No. 25-5 at 2 (discussing where the victim was shot, as well as the victim's medical treatment). Thus, after the Court removes the misleading identification from the arrest warrant application, there is a genuine issue of material fact as to the existence of probable cause.

The same is true of the remaining statements in the affidavit supporting the search warrant. Although the search warrant affidavit contains several statements not contained in the arrest warrant application, these additional statements do not change the fact that, without the identification of Whitley as the shooter, there is a genuine issue of material fact as to the existence of probable cause. If anything, these additional statements further substantiate

Whitley's concerns about the propriety of the warrant application process. For example, the search warrant affidavit prepared by Detective Harley indicates that "[Ms. Boodie] stated that the male wearing the *green* shirt was the individual who shot the victim." ECF No. 25-2 at 2 (emphasis added). That statement, however, is inconsistent with the statement Ms. Boodie made to Detective Talley on October 24, 2009 – the day of the shooting. On that occasion, Detective Talley asked Ms. Boodie to "describe the person who [she] saw shoot the victim," to which she replied, "It happened so quickly[,] I believe it was the person wearing the *white* t-shirt." *Id.* at 25-3 at 9 (emphasis added). Detective Talley then asked Ms. Boodie to "[d]escribe the guy with the gun who shot [the victim]," to which she replied, "The person was wearing a white shirt, blue jeans with dreads to his shoulders." *Id.* at 10. Thus, unlike the warrant application, which indicates that Ms. Boodie identified the shooter as wearing a *green* shirt, Ms. Boodie's statement given to Detective Talley right after the shooting identified the suspect as wearing a *white* shirt. The inconsistencies do not stop there.

The search warrant affidavit also indicates that "[Ms. Boodie] [] stated that both subjects live downstairs in apartment #2." ECF No. 25-2 at 2. Again, however, when Detective Talley interviewed Ms. Boodie shortly after the shooting on October 24, 2009, Ms. Boodie did not say that the shooter *lived* in Apartment 2A; rather, she simply said that she had *seen* the shooter in that apartment previously. *See* ECF No. 25-3 at 4. Thus, far from supporting a showing of probable cause, the inconsistencies between Ms. Boodie's statement to Detective Talley and the warrant applications further demonstrate the factual disputes surrounding the existence of probable cause.

Furthermore, at his deposition, Detective Harley effectively conceded that without Ms. Boodie's identification of Whitley, there was no other evidence that Whitley was the shooter:

**[Plaintiff's Counsel]**: Other than the ID, was there any other type of – and "evidence" might not be the right term, because some people would tell you, well, it's not evidence until it's entered in court.

**[Detective Harley]**: Sure

**[Plaintiff's Counsel]**: But were there any other facts, details, information, anything else at all that pointed to Everett Whitley as the potential perpetrator other than the ID – and we'll talk about that – but other than that?

**[Detective Harley]**: No, I don't recall that.

*     *     *     *     *     *     *     *     *

**[Plaintiff's Counsel]**: The only evidence that you cited in this application for a statement of charges that actually points to Mr. Whitley is [Ms.Boodie's] testimony; is that right?

**[Defense Counsel]**: Objection.

**[Detective Harley]**: Yes.

*See* ECF No. 29-2 at 18:16-17:4; 106:8-13. Thus, without the statements identifying Whitley as the shooter, there is a genuine issue of material fact as to whether the warrant applications contained probable cause. *See Alexander v. Alexander*, 229 F.2d 111, 116-17 (4th Cir. 1956) ("If the facts are undisputed and only one inference can be drawn from them the question of existence of probable cause is for the court to determine, but when the facts relied on to show probable cause are in dispute, their existence is a question of fact for the determination of the jury.").

### 2.    Qualified Immunity

Defendants contend that, even if there was not probable cause to support the issuance of either the search warrant or the arrest warrant, they are, nevertheless, entitled to an entry of summary judgment because their actions are protected by qualified immunity. *See* ECF No. 25-1 at 4-9. Qualified immunity is an affirmative defense to §1983 claims and "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly

13

established statutory or constitutional rights of which a reasonable person would have known.'"
*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To determine the applicability of qualified immunity, the Court follows a two-step analysis. First, it must determine whether the facts viewed in the light most favorable to Whitley establish the deprivation of a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). If so, the Court then proceeds to determine whether, at the time of the alleged violation, the constitutional right was "clearly established" and "whether a reasonable person in the official's position would have known that his conduct would violate that right." *Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir. 1996) (quoting *Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir. 1992)). "Clearly established," for purposes of qualified immunity analysis, means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999). The "answer to both [] questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)). Here, the answer to both questions is "yes."

First, when viewed in the light most favorable to Whitley, his allegations clearly establish the deprivation of his Fourth Amendment rights, as he has alleged that he was searched and seized pursuant to warrants that lacked probable cause. *See* ECF No. 1 at ¶ 65; *see also* U.S. Const. amend. IV. Second, "[t]he Fourth Circuit has held it is *clearly established* that the Federal Constitution does 'not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause.'" *Murphy v. Anne Arundel County, MD*, No. 12-1533, 2012 WL

5463021, at *7 (D. Md. Nov. 7, 2012) (emphasis added) (citing *Miller*, 475 F.3d at 632). The question therefore becomes whether a reasonable person in Detective Harley's position would have known that his conduct would violate Whitley's rights. The Court finds that a reasonable officer would have known that his conduct violated Whitley's Fourth Amendment rights.

In cases alleging that a warrant was issued without probable cause, the law enforcement officer who requested the warrant loses immunity from suit "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs,* 475 U.S. 335, 345 (1986). In *Malley,* the Supreme Court advised lower courts to ask whether

> a reasonably well-trained officer . . . would have known that [the affidavit in question] failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest.

*Id*. Here, a reasonably well-trainer officer would have known that a warrant application containing a witness's identification that was procured through suggestive police techniques would likely mislead the issuing official into believing probable cause existed. Indeed, as the Fourth Circuit has explained, "a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by statements that the officer knows or should know are false." *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996). Thus, even though Detective Harley's statements in the warrant applications regarding Ms. Boodie's identification of Whitley as the shooter were not literally false, the Court finds the statements to be sufficiently misleading that a reasonable officer would have and should have known that the affidavits likely did not establish probable cause. Accordingly, Detective Harley's actions are not protected by qualified

immunity.[3] The Court will therefore deny Defendants' motion for summary judgment as to Whitley's § 1983, to the extent that claim relates to the issuance of both the search warrant and the arrest warrant.[4]

### 2.   Excessive Force

Whitley's §1983 claim also involves allegations that Defendants used excessive and unreasonable force when they arrested him. *See* ECF No. 1 at ¶ 65.  Just like claims involving false arrests and unreasonable searches, claims that law enforcement officers used excessive force when making an arrest 'should be analyzed under the Fourth Amendment and its 'reasonableness' standard.'" *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "The question is whether a reasonable officer in

---

[3] Although Defendants rely extensively on *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991) to support their claimed entitlement to qualified immunity, the Court is not persuaded by that case. In *Torchinsky*, an officer was assigned to investigate an assault. The victim, still hospitalized at the time of the investigation, identified Bill and Sylvia Torchinsky as the attackers. The officer conferred with his sergeant, who believed there was probable cause to arrest the Torchinskys. The officer then presented his evidence to a magistrate judge, who determined that probable cause existed and issued the arrest warrants. Following the Torchinskys' arrest, however, the victim recanted his earlier identification, and the charges against the Torchinskys were ultimately dismissed. The Torchinskys thereafter brought suit against the officer, who raised a qualified immunity defense. The Fourth Circuit agreed with the officer that his actions were protected concluding that it was "surely reasonable for a police officer to base his belief in probable cause on a victim's *reliable* identification of his attacker." *Torchinsky*, 942 F.2d at 262. Thus, critical to the Court's holding was the fact that the underlying identification of the plaintiff by the victim was *reliable*; that is, "[a]lthough there may have been reason to doubt the validity of the victim's account, in that he had changed his initial story and was undergoing hospital treatment, the victim's statement was unequivocal and his lucidity was confirmed by the hospital staff." *Merch. v. Bauer*, 677 F.3d 656, 664 (4th Cir. 2012). Here, however, the underlying identification by Ms. Boodie of Whitley as the shooter was not reliable; rather, that identification was obtained through suggestive police tactics that were likely to mislead the magistrate into believing probable cause existed. *Torchinsky* is therefore unhelpful to Defendants.

[4] The Court's denial of Defendants' motion for summary judgment relates only to Detective Harley. As to Detective Talley, the Court will grant summary judgment on his behalf regarding Whitley's § 1983 claim. Whitley has not provided the Court with any evidence to suggest that Detective Talley was involved in the deprivation of Whitley's Fourth Amendment rights discussed in this Section III.A.1.

the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson*, 247 F. 3d at 129. "The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996). Moreover, reasonableness analysis necessitates "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Hayes v. City of Seat Pleasant, Md.*, 469 F. App'x 169, 173 (4th Cir. 2012) (quoting *Graham*, 490 U.S. at 396).

Here, Whitley alleges in his complaint that he was "physical attacked" when he was arrested on November 23, 2009. ECF No. 1 at ¶ 14; *see also id.* at ¶ 65 (alleging that he was subjected to "excessive and unreasonable force"). The evidence gained through discovery, however, belies this allegation. Specifically, Whitley testified at his deposition as follows:

> **[Defense Counsel]**: How were you physically handcuffed? In other words, were you handcuffed on the bed?
>
> **[Whitley]**: They put me in the living room.
>
> **[Defense Counsel]**: Yes.
>
> **[Whitley]**: And they put my hands, handcuffed me, put my hands behind my back.
>
> **[Defense Counsel]**: How many officers did it take to arrest you?
>
> **[Whitley]**: There was only one because I was cooperating. I was, you know.
>
> **[Defense Counsel]**: So it was an arrest without any incident.
>
> **[Whitley]**: Yes.
>
> **[Defense Counsel]**: In other words, there wasn't any struggle because you cooperated.

[**Whitley**]: No. No struggle.

Thus, by Whitley's own account, Defendants did not use excessive force against him during his arrest. Accordingly, there is no genuine issue of material fact as to the reasonableness of the alleged force used by Defendants. The Court will therefore grant Defendants' motion for summary judgment as it relates to the excessive force component of Whitley's §1983 claim. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing the general rule that "when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion.").

> **B.      Section 1983 Claim – 5th Amendment (Count XXIV)**

Whitley claims Defendants violated his constitutional rights by (1) failing to provide him with his *Miranda* warning prior to being subjected to a custodial interrogation and (2) continuing to question him following his invocation of his *Miranda* rights. *See* ECF No. 1 at ¶¶ 318- 332; *see also Miranda v. Arizona*, 384 U.S. 436 (1966). Whitley's allegations, however, fail to set forth a valid claim for a violation of §1983 because the mere alleged violation of *Miranda* rights cannot support a § 1983 claim. *See Chavez v. Martinez*, 538 U.S. 760 (2003) (plurality). As the Fourth Circuit recognized in *Burrell v. Virginia*, 395 F.3d 508, 513-15 (4th Cir. 2005), there is no constitutional violation to support a § 1983 claim where, as here, the statement obtained by the allegedly coercive interrogation is not used against the individual in a criminal trial. *See id.* (discussing *Chavez*, 538 U.S. 760). Here, Whitley readily admits that it is "true" "that [his] statements were never used against him [in] a court of law." ECF No. 29 at 14. The Court will therefore grant Defendants' motion for summary judgment as to Count XXIV as there is no

genuine issue of material fact as to whether Whitley's statements were used against him in a criminal trial. *See Chavez*, 538 U.S. at 772.[5]

### C.    Section 1985 Claim (Count III)

In Count III, Whitley avers generally that Defendants "conspired with each other to violate the constitutional rights of Whitley" "by failing to discipline, properly train, and/or fire the Defendant Detectives for their propensity to escalate petty slights into violent confrontations, thereby creating an environment in which the conspiracy was permitted." ECF No 1 at ¶¶ 80-81. To prove a conspiracy under §1985, a plaintiff must establish "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Additionally, to prove a section 1985 conspiracy, the plaintiff must "show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Id*. The Fourth Circuit has taken a restrictive view of this cause of action, noting that, "under that standard, [it] has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a summary judgment motion." *Id*. Moreover, the Fourth Circuit has "rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id*.

---

[5] The Court notes that it is an open question whether an individual who provides an involuntary incriminating statement may permissibly state a § 1983 claim as a violation of substantive due process. *See Burrell,* 395 F.3d at 513 n. 3. However, this Court does not construe Count XXIV as a substantive due process claim because of the header to Count XXIV ("Violation of the Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983") and because Whitley failed to mention the alleged interrogation in his Fourteenth Amendment claim (Count One).

Here, Whitley's § 1985 conspiracy claim fails because he has not produced any evidence to support his allegations that Defendants participated in a joint plan of action to deny him his constitutional rights. Rather, Whitley's § 1985 conspiracy claim rests entirely on conclusory statements lacking evidentiary support. Additionally, Whitley has failed to identify any evidence to suggest Defendants were motivated by a class-based, invidiously discriminatory animus. *See* ECF No. 1 at ¶ 23 ("At all times relevant hereto, Defendants acted with an evil and rancorous motive, influenced by hate, the purpose being to deliberately and willfully injure Mr. Whitley."); *see id.* at ¶ 24 ("At all times relevant hereto, Defendants acted deliberately, with ill will, improper motive, and actual malice."); *see also Kangalee v. Baltimore City Police Dep't*, No. 12-01566, 2012 WL 5457231, at *8 (D. Md. Nov. 7, 2012) (dismissing § 1985 claims where plaintiff "failed to allege that Commissioner Bealefeld and Tshamba were 'motivated by a specific class-based, invidiously discriminatory animus'"). Accordingly, Whitley's § 1985 claim fails and the Court will grant Defendants' motion for summary judgment as there are no genuine issues of material fact as to the existence of a conspiracy among Defendants.

**D.     Section 1986 Claim (Count IV)**

Under 42 U.S.C. § 1986, a plaintiff may bring an action for damages against any person who, having knowledge of and the ability to prevent the alleged § 1985 conspiracy, neglected to do so. *Brisset v. Paul*, 141 F.3d 1157, at *3 (4th Cir. 1998) (unpublished). Due to the interrelation between § 1986 and § 1985 claims, if a "§ 1985 claim is meritless, the § 1986 claim fails as well." *Id.* Because the Court finds that Whitley has failed to state a § 1985 claim for conspiracy, he has failed to state a § 1986 claim as well.

**V.      CONCLUSION**

Based on the forgoing, the Court GRANTS, IN PART, and DENIES, IN PART, Defendants' Motion for Summary Judgment.

Dated: <u>November 3, 2014</u>                              <u>        /S/            </u>
                                                                     George Jarrod Hazel
                                                                     United States District Judge